United States v. Diallo Good morning, and may it please the Court. My name is Kurt Parkins, and I represent the appellant in this matter, Isid Diallo. With the Court's permission, I'd ask for five minutes of rebuttal time. In this matter, an appellant pled guilty in the lower court to a single count of credit card fraud. By way of background, this stemmed from the use of unlawfully obtained credit card information, which was obtained in two different manners. Mr. Diallo obtained it from a third party, some of the account numbers, and others he obtained through the use of a skimming device through which credit cards were run through to store the information. Once these account numbers were received, Mr. Diallo used them to purchase gift cards at Wegmans grocery stores. At the time of sentencing, the Court took note that the guidelines require the Court to sentence and base an offense level either on the actual or intended loss, whichever is greater. And in this case, the Court went with the intended loss. The actual loss here was only approximately $160,000. Did it put any evidence in at the hearing as to what the intended loss was? Our position is that insufficient evidence was presented, Your Honor. The Secret Service agent that – Wait a second. Insufficient evidence was – you mean he presented evidence, but it was – didn't satisfy the district court? My apologies. You didn't put any evidence as to what the – we all know the actual loss, but you didn't put any evidence as to what the intended loss would be. We did not put any evidence as to the intended loss. Well, then did you default? Is it automatic then that whatever the State says is the loss? The State did put on a witness a Secret Service agent that arrested Mr. Diallo in this case. However, it's our position that even if you accept everything in his testimony as true, the State didn't make out their case. At the sentencing hearing, the State – Why wasn't it reasonable for the court to determine that Mr. Diallo would try to take everything that he could? Because there was absolutely – there wasn't a shred of evidence presented that that was his actual intent. What the Secret Service agent basically said was – Practically speaking, he certainly could have, couldn't he? He could have, but absent any evidence that that was his intent, I believe it was error for the court. Go back to Judge Kavanaugh's question. I mean, there is a burden-shifting framework that you work under, and the government went forward and presented its case, and certainly Diallo had an opportunity in that way to say, no, that's not what I intended. I intended something else. I agree that – I would not possibly have taken all that money. I agree that there is a burden-shifting, but the United States still has to meet an initial prima facie case or burden of proof in determining the intended loss. Now, the other side cites Geavers, the Geavers case, which talks about the burden-shifting in determining the intended loss. Do you agree that's the standard that should be followed? I think that that case is distinguishable for the case at hand. In Geavers, we – Because it's a draft check instead of credit cards? Not so much that it's a check, but in that case, they were dealing with checks and they were written out for a specific amount deposited, and then the defendant in that case attempted to withdraw a smaller amount of money. Actually, I thought that Geavers was helping you, was helpful for you. I mean, Geavers did say that under the burden-shifting analysis, intended loss does not equate to the face value of the deposit checks. There, of course, you had an actual amount, so it was a lot easier for the court to evaluate what the intended loss was, but in your case, it's very different. That's correct, Your Honor. In that case, he actually wrote a check for $75,000, and in terms of that check, that was the intended loss for that check, even though we actually obtained a much smaller amount of money. In this case, there were – You prevail here, and we remand it, let's say. What is your position going to be in an evidentiary hearing as to the intended loss? Our position at this point is that in order for the United States to meet its burden in proven intended loss, they have to put on some evidence other than just saying, these are the aggregate credit card limits, and that's what we're going to go with. Well, that's their – look, you may say that's fantastic that they – he would have stolen the credit limit of the cards, but that's their prima facie case. Now, what are you going to say in response? Because that's the government's position. You might not agree with it. I may or may not agree with it. What are you going to do on remand when they come up with that scenario? If I may address the first part of your question, Your Honor, I don't believe that that would be sufficient for them to make out a prima facie case. If you look at prior cases – Suppose it is. Suppose the district court says it is and we agree. What is your position as to the intended loss? If the United States is able to make out a prima facie case at that point, I believe that we – our only recourse would be to take testimony from Mr. Diallo. And his position would be that what? He didn't intend to take anything more than he actually took?  And how much would he say he intended to take beyond the actual loss? I at this point can't answer that question, Your Honor. I'm not sure. All right. So let's get back to the original position. Why isn't the government's prima facie case sufficient and the district court within its discretion to accept it if there's nothing in response? Sure. If you look at prior cases in this circuit and from other circuits, in cases where the use of credit limits is a sufficient – is a proper manner of calculating intended loss, there was other evidence to support the fact that that was actually the intended loss. In a prior case in this circuit that was actually cited by Appelli in their brief in United States v. EULA, the court allowed the aggregate credit limits to be used. However, in that case, it was a conspiracy and co-conspirators testified that the object of the conspiracy and the intent was to exhaust all of the credit cards. In other cases from other circuits, you have facts such as some of the credit cards used were exhausted or that they were used multiple times. In this case, the United States failed to put on any evidence that the cards – specific cards were used multiple times and that they were being used over and over again. They didn't put on any evidence that any of the They didn't put on any evidence from witnesses indicating that the intent of the scheme – Well, that could have been your – I mean, you could have put on evidence that some of the cards were exhausted to have reduced the potential range and that may have reduced the range down below a million dollars, which would have given you a different guideline or changed the amount of points. I do agree that we did have the opportunity to put on evidence. However, it would be our position – I'm sorry, evidence of what? Excuse me? You had the opportunity to put in evidence of what? In terms of testimony, we would have been able to put on testimony. However, at the sentencing hearing, the initial burden is on the United States and it's our position that they didn't make that burden and therefore, we didn't have an obligation to put on any evidence because they didn't make that prima facie case. Suppose we disagree with that. Suppose we say that they made a prima facie case, not a very good one, but they gave it their best shot. Where does that leave you? If they presented a prima facie case, I believe that – We need to determine. I'm not – we have a conference here, but let's say this panel determines they made a prima facie case. It wasn't a good one, but it was – you know, it had a lot of holes in it. You didn't know what the limit was on these cards, but that's – look, the government gave it their best shot and we say they made a prima facie case. Where does that leave you? Honestly, if the court finds that they did make a prima facie case, we're at that point sunk because we didn't put on evidence. We've got to affirm. Yes. What was the district court's decision? The district court simply – they accepted the testimony that was taken at the sentencing hearing and used the aggregate credit limits. And this is one of the problems, I think, in this case is that, first and foremost, the court didn't provide any reasoning for its calculation of intended loss other than to say we aggregated the credit card limits, so that's the intended loss. Well, that's reasoning. They say we're dealing with a thief. A thief will take as much as they can. And this is what the – he was capable of taking. And you put on nothing to say, look, I just wanted to cover my bills and I would have – your man didn't come up with anything. So, I mean, your position, as I listen to it, is that the government should get on the stand and somehow read the defendant's mind as to how much he intended to steal, which no one's going to allow anyone to do that. And I would agree, Your Honor, that that would be improper, but there are methods, as has been shown through the other circuit cases, to prove that. Through showing that credit cards that he used, that he exhausted them, and that wasn't done here. To show that cards were used multiple times, to show that he was trying to use the full amount of the cards, that wasn't done. But does he have to show his purpose? I mean, I thought that the burden-shifting analysis the government goes forward and, for the most part, explains what the defendant has done, used these credit cards, and then it could simply say he intended to use the maximum of the cards, but then you would go forward and explain why not. It's our position that, because the intended loss does require some proof of a mens rea, that it's not sufficient to just say, it's a credit card scheme, so we aggravate it. There has to be something other than the aggravated credit limit to indicate that he was going to use the full amount of the cards, and that was not presented here. What else could the government have done besides give the rate of each credit card? How much, what other evidence could the government have used? In terms of calculating intended loss? Yeah. In this case, I'm not sure that they had really, you know, anything to go on in this case, but in the past they have used co-conspirators and credit card records to show how he was using the cards. Well, they didn't have that here. So your position is that there could be no loss beyond the actual loss? In this case, I believe it would be impossible to determine the intended loss, absent a statement from the defendant, and the court would have to sentence it in the intended loss. All right, Mr. Parkins, thank you very much. Thank you. Mr. Cerruti. Thank you, Your Honor. May it please the Court, Stephen Cerruti on behalf of the United States of America. On the sole remaining issue in this case, obviously the United States feels that there was an adequate basis for the district court holding that there was an intended loss in this case of over $1 million. You concede, though, that the defendant had no knowledge of the credit limits of these cards? There is no evidence that he had knowledge of the credit limits. That's correct. You concede it, then, don't you? Yes. All right. So how can you say that's his intended loss, his intended intention of what the loss would be? He had no knowledge of it? He had no knowledge of the specific credit card limits. However, it is clear from various number of cases that have been cited actually by both sides that, you know, you can find that a criminal has the intent to steal as much as possible. And then when trying to come up with the kind of reasonable idea of what the intended loss might be, that using aggregated credit limits is intendable. What evidence did you have in this case that he was going to steal the credit card limit here? What evidence was it? You gave a credit card limit. What evidence is there other than the credit card limit that he intended to do that? If he intended to do that, it would be suicide for any half-witted crook to do it. But what evidence did you put in except that that was a limit? Crooks have done stupid things in the past. But as far as the specific evidence in this case, yes, we did put on the evidence of what the aggregate credit card limits were for all of the 300-plus accounts that had been compromised. But that, then, is another fact. We have over 300 credit card accounts that have been compromised. We have his involvement in a scheme where he has a skimming device, he has the electronics necessary to make this a wide-ranging, very lucrative scheme. We have the fact that when he's caught, he has taken $160,000 worth of gift cards. This is not a petty thief who finds one card and makes a quick charge on it. And he continues to hold on to these numbers and continues to have access to these numbers. So it's not a convenience check situation where he's only got two checks, he writes them, and they're out of the picture. The problem is that it's very, very difficult to tell from the district court's analysis whether any of that played a role in the district court's decision. And the decision, you know, is very brief, and I'll read it just for the record. The intended loss for credit cards he personally used and the cards he manufactured and provided to others totaled $1.6 million. Over 50 financial institutions were affected by his actions, so obviously it's a very serious offense. That's the end of the analysis. So, I mean, it seems to me that he equated intended loss with potential loss, and that's exactly what Judge Becker was talking about in the Giri's opinion when he said, it is clear that a district court errs when it simply equates potential loss with intended loss without deeper analysis. That analysis of the district court did not seem to me to be a deep analysis. Would you agree or disagree? Well, I would agree that in a perfect world, the record would have been a little bit more expansive than what we have to deal with here. But the fact is, in the Giver's case, which I understand you may not think is as positive for the government as maybe I thought it was, it does talk about how the court can draw reasonable inferences from the nature of the crime. And so, yes, the court doesn't specifically say that it is doing that. I think, however, it can be inferred from the fact. You're right, but the problem is he says, look, the max that he could have taken on these crimes is $1.6 billion. He must have intended that, and that's the finding of this court. He says that makes it a very serious crime. I would concede that you can read it to indicate that, but I think you can also read it to indicate that after having heard the arguments from counsel on this very issue and then not being presented with any evidence by Mr. Diallo himself, once we made our prima facie case, that the inference that he was making, that we have the nature of the crime, we have the fact that this was a wide-ranging scheme, we have the fact that Mr. Diallo, even after agreeing to this plea agreement, is arrested with another 100 compromised credit card accounts, that this is a guy who's going out there and he wants to get as much money or gift cards, whether at Wegmans or someplace else, as possible. Yeah, but the question here is not that he's such a great person and that he wouldn't take whatever he could get his hands on, but the question is did you make a prima facie case? All you made was a case showing the limits of the credit cards. There's no evidence that he had that intent, and so why can't we say no prima facie case was made such that the defendant did not put any rebuttal? When the district court took as a fait accompli that he intended to exhaust every single credit card and there's no facts and evidence from which that conclusion can be drawn. Well, the United States would disagree and say that there are facts and evidence. How could the district court make that conclusion that he was going to exhaust the credit line of every single credit card in his possession? By looking at the evidence that I've listed regarding the extent of the crime, the interest in continuing and making the crime ongoing, the efforts to move from state to state throughout the mid-Atlantic region, buying things at different locations to make it more difficult to track. This gives rise to the possibility of a reasonable inference that he wanted to steal as much as possible. You're doing a lot better than the district court did in this case. I mean, the district court said $1.6 million is the max. It's a serious offense, and that was the end of the analysis. That seems to me to be totally deficient in regard to Giebers, which says you have to do a deeper analysis than that. Well, I think given the amount of discussion that was had during the sentencing about this issue, that it can be inferred that the court was doing some level of analysis. By the way, the district court very well arrived at the decision it did arrive at. It's just that what it has done is it simply equated the intended loss with the potential loss, which is what Giebers says you shouldn't do. I would disagree. The United States would disagree as to the basis for his decision. How can you disagree when he didn't even know what the amount of each of the credit cards was? He didn't know the amount that they were good for. Mr. Diallo didn't know? No. Yes, your client did not. The defendant did not know the rate that each card could have been drawn upon. So how can you just say that's the amount he would have taken? He didn't even know that amount. Well, he may not have known that amount. However, if we get past the problem that obviously we've been having today and say, okay, the court found that he was willing to take whatever it is that he wanted, then what he might have thought was available or what he might have been aware was available or not aware goes to his expectations as to how much he's going to be able to pull down from these accounts. It doesn't go to his intention to take as much as possible and whatever that might be. And Gevers makes it very clear, just as you can't automatically equate possible losses with intended losses, you can also not automatically equate the expectation for what losses are going to be able to be pulled down from these accounts to the intended losses. You have to look at any evidence at that point that is brought up by Mr. Diallo to really kind of get the area of where the intent of the losses were and if he's going to make some sort of argument that, oh, I only wanted to take about $2,000 from every one of these accounts each and that's all I was going to do. But he didn't offer anything. The only evidence that was offered. You didn't offer anything either. You just offered the credit limit of each card. You didn't offer any intent on his part except what he had already done. And from what he had already done, how do you extrapolate that he would have gone to the credit limit of every single card in his possession? Again, all I can say is from the manner in which he had undertaken his fraud up until that point, as wide ranging as it was with his traveling to different districts, with taking as much money as he was and there being no indication at all anywhere that he was ready to stop. There was no indication at all that he had any intention to steal less than whatever he could get his hands on. It's basically when you get a case like this, you just figure out what's the worst case scenario and that's the guideline frame that you use, isn't it? What's the worst case scenario? Maximum that you could charge on all credit cards. But that doesn't seem to me to be the correct analysis. Well, the worst case scenario with nothing more would be problematic. And I think that's what Deavers has to say. And if the court finds that there is nothing more that has been offered other than the worst case scenario, then obviously that's very problematic for the United States case here. Mr. Ceruta, let me ask you one other facet here. With our post-Booker jurisprudence, was this sentence procedurally unreasonable? With regard to the second issue? With regard to the first issue. Well, with regard to the first issue. In other words, does our post-Booker jurisprudence require a court to explain in greater detail how it arrived at the $1.6 million figure to add the four points in the guideline calculation?  I think, however, that most of the cases that are running through my head like crazy right now say that it doesn't have to be tremendously specific and doesn't have to address every single particular element that could happen. The appellant does raise that in its brief. Maybe not real artfully and forcefully. They focus more on what was the right number and what wasn't. But as Judge Fuentes has raised, the district court was rather sketchy as to how it concluded that the testimony from the Secret Service agent was sufficient to allow for that four-point enhancement. Just throw out there, is that procedurally unreasonable? I would argue no, because I think that there can be the inference based again on the fact that we had this discussion back and forth during the sentencing on this very issue and that it can be inferred that the district court took that into consideration, being made aware of the cases that were raised by Mr. Diallo's counsel, and having before it the facts that we've discussed here this morning, which Deaver says you can draw from those types of facts the nature of the crime, reasonable inferences as to what the intended loss was. Again, could the decision have been spelled out a little better? Perhaps. You know, as an appellate attorney, I'd love it if there was a little bit more put in there. But you come to the Third Circuit with the decision you have, not the decision you want. And you're saying we haven't said specifically that it need be spelled out further in each and every case? Off the top of my head, I'm not coming up with a case that says that. That doesn't mean it's not out there. It just means my memory is failing me this morning. Mr. Ceruta, any further? Nothing further. Mr. Memory has been exhausted. Absolutely. Thank you. We can go on to Mr. Parkins. Your Honor, Pelle's argument rests on the assertion that because Mr. Diallo engaged in criminal activity, that he's a criminal and therefore we should infer that he wanted to steal as much as he possibly could. However, the problem with that argument, as Your Honor noted, is that Pelle concedes that Mr. Diallo had absolutely no knowledge as to what the credit limits on these cards were. Well, you know, a person in his position might simply just keep using them until a store merchant says, you know, I'm sorry, I can't accept this card anymore. So why was the district court wrong in saying, look, just add up what you – if you hadn't been caught, you would have just run through all these credit cards until you would have exhausted the maximum on each one? The problem is that the guidelines, and as one of the cases I stated in the brief, Manitow out of the Tenth Circuit makes clear, is that you have to have a specific intent to steal a certain amount of money. Any lesser mens rea is insufficient. And as Your Honor noted, it is possible that – But that's for the offense itself. That's not for the guideline calculation. Well, I think relying on what the Tenth Circuit said there, there does have to be an analysis into his specific intent to steal a certain amount of money. Deavers uses a phrase, and Deavers is approved in an opinion by Judge Randall. I think it's Tinchill you're familiar with that case also. I'm not familiar with Tinchill. No, you should be because it certainly supports your position quite a bit. Deeper analysis is the phrase used. You're familiar with that phrase? Yes, Your Honor. What do you take that to mean? How would the district court in this case have conducted a deeper analysis? This is essentially what Judge Cowan was asking me before. What does a hearing comprise of? What would be done? You know, I honestly think, and I agree with Your Honor, that there was barely any analysis here as to intended loss. But I think that it would have been difficult for the district court to do here because the United States failed to put on really any evidence for him to consider. They just put the officer on the stand to testify that these are the aggregate credit card limits and didn't offer any other facts. And as Your Honor noted, you know, it's possible that he may have wanted to just go out and keep using these cards over and over again. And if that were the case, it would have been easy for the Commonwealth to make its case if they went into the credit card records and showed that he had used them multiple times or that he had exhausted just one of the credit cards. The United States relies on the fact that it was a wide-ranging scheme that included over 300 compromised credit cards in support of the fact that the intended loss was basically the worst-case scenario. But they didn't put on any evidence that a single one of those over 300 cards was either exhausted, which would go to prove their prima facie case, or that Mr. Diallo had used any of them multiple times. Because the United States failed to put on any further evidence other than just saying, well, we aggregated the limits. You know, I think it would have been difficult for the court to go into a deeper analysis because it's our position that they didn't make a prima facie case there. The only other thing that I would note. Now, you say that they didn't make a prima facie case. The government maintains throughout the sentencing process the burden of persuasion. But didn't the burden of production shift to your client once they put the figure forward that the credit card limits was $1.6 million? And isn't that where you failed by not meeting your burden of production? I don't believe that the burden did shift because that number was not based on any articulable facts that would have caused the burden to shift to us. Was there evidence on the part of the government that some of those cards were drawn down so that the maximum could not possibly have been $1.3 million? No, Your Honor. That was a greater limit. Yes. But some of those cards were drawn down so that that much money was not available. The $1.6 million was not available. Is that right? That's correct, Your Honor. As the officer admitted on the stand at the sentencing hearing, the United States had no idea how much credit was already used up on the cards and how much was left. So if you had one card with a $20,000 limit, there could have been $19,000 used when he got the card, and he would have only been able to utilize $1,000 on that card. Does that fact relate to intended loss? I think it does, Your Honor, because it would make it impossible to use that amount of money. It makes it impossible, but that doesn't mean he did not intend to exhaust the credit card's credit limit. That's correct, Your Honor. But I think what that analysis does is, as you pointed out, is simply equate intended loss to potential loss. And I believe that's what the court did here because there were no facts to support the intent. But it seems to me you want to argue that you want to conflate intended loss with actual loss and want the amount that was actually taken. No, Your Honor. I do understand and accept the fact that the intended loss can be much greater than the actual loss, and if it is, then that's the proper number for the court to sentence on. However, there's just no facts to support a calculation of intended loss here. The only facts that were presented are those that support, as Your Honor noted, the potential loss. But as the court made clear in Gievers, that that is not the same as intended loss. You need additional facts. Thank you, Mr. Parkins. Thank you. And you as well, Mr. Cerruti. Thank you both. Interesting case as well. And we'll take the matter under advisory.